UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-24679-CIV-LENARD/GOODMAN

ZHEJIANG DUSHEN NECKTIE CO., LTD.

    Plaintiff,

v.

BLUE MED, INC., et al.

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Defendants Eros Cattaneo; Ida Arnese; Blue Med, Inc.; Neo Design, Inc.; Pandora Holding Group, Inc.; and E.H.I. LLC move to dismiss Count I of the Complaint filed by Plaintiff Zhejiang Dushen Necktie Co., Ltd. [ECF Nos. 1; 10]. Under Count I, Zhejiang seeks to pierce the corporate veil between the movants and E.C. Global, Inc., a co-Defendant currently in bankruptcy that Zhejiang sued for breach of contract under Count II of the Complaint. [ECF No. 1]. Zhejiang filed an opposition response to the motion to dismiss [ECF No. 17], and Defendants filed a reply. [ECF No. 20]. The parties have consented to the Undersigned issuing final orders with respect to motions to dismiss. [ECF No. 23].

For reasons explained below, the Undersigned **denies** Defendants' Motion to Dismiss.

I.  **Allegations in the Complaint**

Zhejiang is a Chinese company that manufactures and exports neckties, scarfs, and other garments. [ECF No. 1, ¶ 2]. E.C. Global was dissolved at the time of the lawsuit. [ECF No. 1, ¶ 3]. Its principal place of business matches the home address of the individual Defendants -- Cattaneo and Arnese, who are husband and wife -- and the principal place of business, mailing address, or registered agent address for the other corporate Defendants. [ECF No. 1, ¶¶ 3–9].

Cattaneo is the sole director, president, registered agent, secretary, and treasurer of E.C. Global, Blue Med, and Neo Design; the sole president and registered agent of Pandora Holding; the sole manager and registered agent of E.H.I.; and, on information and belief, a majority shareholder of all those corporations. [ECF No. 1, ¶ 4]. Arnese, in turn, is the sole vice president and vice secretary of E.C. Global and Neo Design; the sole vice president of Blue Med and Pandora Holding; the sole treasurer and secretary of E.H.I.; and, on information and belief, also holds shares in all the corporations. [ECF No. 1, ¶ 9].

The dispute began with E.C. Global owing Zhejiang more than $391,000 for past orders. [ECF No. 1, ¶ 12]. The two agreed that E.C. Global would pay down the debt while placing additional orders, which Zhejiang fulfilled. [ECF No. 1, ¶¶ 12–13]. The arrangement worked until it stopped working, resulting in E.C. Global owing Zhejiang more than $380,000. [ECF No. 1, ¶ 14].

Without Zhejiang's knowledge, E.C. Global filed for corporate dissolution. [ECF No. 1, ¶ 15]. When Zhejiang learned of the dissolution, it emailed E.C. Global, asking for the money it was owed. [ECF Nos. 1, ¶ 16; 1-9, p. 36]. Cattaneo wrote back:

> i am sorry i did not write you before but we have been busy restructioning the companies. Tie business is still very very soft with all with customers still owe us money therefore i am also in a big crush of cash flow. We will try to help you as much as possible but it will take a while. I am srry to let you know that we had to close Ec Global inc and just operation with other partners with a different company but i am only a parter not the main boss anymore , regardless we will try to do the best we can to help you.

[ECF No. 1-9, p. 36 (grammatical and spelling errors in original)].[1]

In Count I, Zhejiang sued Defendants under a piercing the corporate veil theory. [ECF No. 1, ¶¶ 22–30]. After adopting its general allegations, Zhejiang makes several more-specific allegations in Count I. First, Zhejiang alleges that "Cattaneo and Arnese have been conducting, managing, and controlling the affairs of E.C. Global, Blue Med, Neo Design, Pandora Holding, and E.H.I." [ECF No. 1, ¶ 23]. Second, Zhejiang alleges that "Cattaneo and Arnese have held themselves out to Plaintiff as inseparable with, and indistinguishable from, E.C. Global." [ECF No. 1, ¶ 24]. Third, Zhejiang alleges that "Cattaneo and Arnese wield such complete dominion and control over E.C. Global, Blue Med, Neo Design, Pandora Holding, and E.H.I. such that those corporate Defendants are mere instrumentalities or agents, or alter egos, of Cattaneo and Arnese." [ECF No. 1,

---

[1] Zhejiang also made a demand for payment through the China Council for the Promotion of International Trade/China Chamber of International Commerce Mediation Center. [ECF Nos. 1, ¶ 18; 1-9, p. 16].

¶ 25].

Fourth, Zhejiang alleges that "Cattaneo and Arnese have used, and continue to use, E.C. Global to mislead or to perpetrate a fraud." [ECF No. 1, ¶ 26]. Specifically, Zhejiang alleges:

> Cattaneo and Arnese have used, and continue to use, E.C. Global's status as a corporate entity – which is capable of being dissolved and which they did in fact dissolve – as a means to evade payment of the outstanding debt owed to Plaintiff, and to escape their contractual liability to Plaintiff, all the while benefitting from Plaintiff's full compliance with and complete fulfillment of its own commitments under the parties' contract.

[ECF No. 1, ¶ 26].

Fifth, Zhejiang similarly states that "Cattaneo and Arnese have used, and are continuing to use, Blue Med, Neo Design, Pandora Holding, and E.H.I. to mislead or to perpetrate a fraud." [ECF No. 1, ¶ 27]. To support this allegation, Zhejiang adds that

> on information and belief, Cattaneo and Arnese have used, and continue to use, Blue Med, Neo Design, Pandora Holding, and E.H.I. as vehicles for the harboring of funds constituting the debt owed by E.C. Global to Plaintiff, so as to give the false appearance of insolvency or illiquidity on the part of E.C. Global, in their continuing efforts to evade payment of this outstanding debt, and to escape their contractual liability to Plaintiff.

[ECF No. 1, ¶ 27].

Sixth, Zhejiang alleges that "[o]n information and belief, Cattaneo and Arnese have comingled the funds and business relationships of E.C. Global, Blue Med, Neo Design, Pandora Holding, and E.H.I. with those of their own." [ECF No. 1, ¶ 28]. Seventh, Zhejiang also alleges "on information and belief" that "E.C. Global, Blue Med,

Neo Design, Pandora Holding, and E.H.I. have failed to follow corporate formalities in a manner consistent with their purportedly separate corporate identities." [ECF No. 1, ¶ 28].

Eighth, and finally, Zhejiang alleges that

> [t]here is such unity of interest and ownership that the separate identities of the Cattaneo, Arnese, E.C. Global, Blue Med, Neo Design, Pandora Holding, and E.H.I. no longer exist, and such that Cattaneo, Arnese, Blue Med, Neo Design, Pandora Holding, and E.H.I. are liable to Plaintiff to the same extent as E.C. Global.

[ECF No. 1, ¶ 29].

In Count II, Zhejiang brought a breach of contract claim against E.C. Global. [ECF No. 1, ¶¶ 31–39]. The contracts at issue are certain purchase orders for garments and fabrics that Zhejiang fulfilled but for which E.C. Global still owes $380,392.20. [ECF No. 1, ¶¶ 33–36]. E.C. Global later declared bankruptcy. [ECF No. 14].

## II.  Applicable Legal Standard

As a threshold matter, the parties disagree about whether Zhejiang's veil-piercing claim is governed by the notice-pleading standard of Federal Rule of Civil Procedure 8(a) or the heightened pleading standard of Rule 9(b). The parties offer no binding authority directly on the issue. The Undersigned likewise found none.

In their motion to dismiss, Defendants argue that "where the alter-ego claim travels under the allegation that the corporation was used to 'perpetrate a fraud,' as alleged here, those allegations must also meet the heightened pleading standards of

5

Rule 9(b)." [ECF No. 10, p. 4]. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendants then drop a footnote with a string citation to some out-of-state district court decisions that support their position. [ECF No. 10, p. 4 n. 1].

In its opposition response, Zhejiang argues that Rule 8(a) is the proper standard. [ECF No. 17, pp. 7–8]. In support, Zhejiang cites to one out-of-state district court decision, stating that it and others like it (although no other examples are given) have rejected Defendants' position. [ECF No. 17, p. 8 (citing *Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.*, 915 F. Supp. 939, 942 (N.D. Ill. 1996))]. In the case Zhejiang cites, even though the plaintiff alleged that failing to pierce the corporate veil would perpetuate a fraud, the Northern District of Illinois did not subject the piercing claim to Rule 9(b)'s specificity requirement because, under Illinois law, fraud was not a prerequisite to a piercing claim. *Chicago Dist. Council of Carpenters Pension Fund*, 915 F. Supp. at 942. Zhejiang maintains that the same holds true in Florida. [ECF No. 17, p. 8].

In their reply, Defendants admit that "[t]he 'improper conduct' necessary to cause the corporate veil to be pierced may, but need not, be the perpetration of a fraud." [ECF No. 20, p. 8]. Defendants nonetheless hold fast to their position that Rule 9(b) governs here because, according to Defendants, Zhejiang is traveling under a fraud theory. [ECF No. 20, p. 8].

The question is a close one, but the Undersigned finds that Rule 8 is the correct

6

standard for this particular case. Florida law does not require a party to prove fraud to pierce the corporate veil. "In Florida, the rule is that a corporate veil will be pierced where it is shown that the corporation was organized or used for an improper purpose such as to mislead creditors." *In re F & C Servs., Inc.*, 44 B.R. 863, 868 (Bankr. S.D. Fla. 1984) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984)). Thus, "[a]n actual fraud need not be perpetrated upon the creditors as a prerequisite to piercing a corporate veil. A corporate entity will be disregarded in order to prevent injustice to creditors." *Id.* If Zhejiang need not prove up a fraud to prevail on its piercing claim, then it should not need to plead a piercing claim with the specificity required of fraud claims.

Moreover, although Zhejiang does use the word "fraud" twice in its Complaint [ECF No. 1, ¶¶ 26, 27], it is not fair to say that it is traveling under a fraud **theory**. Zhejiang's main claim is for breach of contract, not fraud. [ECF No. 1, ¶¶ 31–39]. And while it alleges that the individual Defendants used their seemingly interchangeable corporate entities "to mislead or to perpetrate a fraud," Zhejiang then specifies that what it means is that the individual Defendants used E.C. Global's dissolution "as a means to evade payment of the outstanding debt owed" and used the other corporate entities "as vehicles for the harboring of funds constituting the debt owed by E.C. Global" and thereby "escape their contractual liability[.]" [ECF No. 1, ¶¶ 26–27]. Thus, it is fairer to say that Zhejiang is traveling under a misleading-creditors theory rather

7

than a pure fraud theory.

In addition, when ruling on motions to dismiss, several courts in the Southern District of Florida have scrutinized piercing claims under Rule 8(a) and not Rule 9(b). *See Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2013 WL 1149668, at *6 (S.D. Fla. Mar. 19, 2013) (analyzing piercing claim separate from fraud claims, which fraud claims the Court reviewed under Rule 9(b)); *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (analyzing alter ego claim separate from fraud claims, which fraud claims the Court reviewed under Rule 9(b)); *Elof Hansson Paper & Bd., Inc. v. Caldera*, No. 11-20495-CIV, 2011 WL 13115561, at *4–5 (S.D. Fla. Sept. 6, 2011) (discussing Rule 9(b)'s requirements for fraud claim but not for breach of contract claims seeking to hold individuals personally liable under a piercing theory); *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265 (S.D. Fla. 2011) (finding that counter-plaintiff sufficiently alleged a claim for piercing the corporate veil after only discussing the pleading standard under Rule 8(a)).

Finally, the Undersigned is persuaded by the reason some courts use when refusing to apply a heightened pleading standard to fraudulent transfer claims. The rationale has some force here. As one court has explained, "[i]n a common-law fraud claim, the defendant is alleged to have made false statements or material omissions to the plaintiff, who is in a position to plead those statements or omissions with specificity." *Pearlman v. Alexis*, No. 09-20865-CIV, 2009 WL 3161830, at *5 (S.D. Fla.

8

Sept. 25, 2009). But "[a] fraudulent-transfer claim, by contrast, involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity." *Id.*

Based on its allegations, Zhejiang likely suffers from the same knowledge gap. Zhejiang alleges that E.C. Global was dissolved without its knowledge. [ECF No. 1, ¶ 15]. Only after Zhejiang learned of the dissolution and emailed E.C. Global asking for its money was it then informed of a restructuring of companies and that E.C. Global had been shut down. [ECF Nos. 1, ¶ 16; 1-9, p. 36]. All of this alleged restructuring and attendant money-harboring, debt-avoiding, and other misconduct would have been done by and among the Defendants only, to Zhejiang's exclusion. Indeed, the gravamen of Zhejiang's claim is that the Defendants restructured *in secret* for those improper purposes. Therefore, Zhejiang likely "has insufficient information to plead its claim with specificity." *Pearlman*, 2009 WL 3161830, at *5.

Accordingly, the Undersigned will analyze the piercing claim under Rule 8(a).[2]

Rule 8(a) requires "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) provides defendants an opportunity to quickly dispose of complaints that fail to "state a claim upon which

---

[2] To be sure, the Undersigned is not making a wide pronouncement that *all* piercing claims must satisfy only Rule 8. Rather, the Undersigned's ruling is limited to the particular allegations in this specific case.

9

relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under 12(b)(6), a court must take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, factual allegations must have "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Legal conclusions must be supported by 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Haese v. Celebrity Cruises, Inc.*, No. 12-20655-CIV, 2012 WL 3808596, at *2 (S.D. Fla. May 14, 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Therefore, an initial complaint is not required to prove the plaintiff's entire case, but should "'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007).

III. **Analysis**

To successfully plead a veil-piercing claim, a party "must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the

stockholder's personal interest, and that the stockholder used the corporation for some illegal, fraudulent or other unjust purpose." *Century Sr. Servs.*, 770 F. Supp. 2d at 1265 (finding that counter-plaintiff alleged the necessary elements of a veil-piercing claim by alleging that plaintiff and parent company were not kept "at an arm's length;" that plaintiff "blurred the lines between the two corporations" by having the parent manage the plaintiff and by sharing a principal place of business; and that plaintiff was used "for a fraudulent purpose by using it to mislead creditors" and shield the parent company from liability); *see also Associated Indus. Ins.*, 2013 WL 1149668, at *6 (rejecting argument "that [p]laintiff's allegations are nothing but threadbare recitations of the requirements for piercing the corporate veil, and as such must be disregarded," where plaintiff alleged that defendants entities had one sole owner and were used as a mere instrumentality or alter ego of the individual defendant and engaged in improper conduct).

Moreover, when analyzing a veil-piercing claim under a motion to dismiss, a court must take stock that "[t]he issue is not whether [the plaintiff] may ultimately prevail on the 'piercing the corporate veil' theory, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579–80 (11th Cir. 1986).

In this case, Zhejiang has stated a claim (albeit by a small margin) to pierce the corporate veil. Taken as true, some of Zhejiang's allegations show a "blurring of

corporate lines" meant to further an improper purpose. *Century Sr.*, 770 F. Supp. 2d at 1265. Specifically, Zhejiang alleges that E.C. Global's principal place of business is the home address of the individual Defendants and the principal place of business, mailing address, or registered agent address for the other corporate Defendants. [ECF No. 1, ¶¶ 3–9]. Also, Cattaneo admitted in an email that there was a restructuring of companies, resulting in E.C. Global shutting down and operations continuing under a different company. [ECF No. 1-9, p. 36]. Zhejiang further alleged that Cattaneo and Arnese have complete dominion and control over their companies and have held themselves out as being inseparable from their companies. [ECF No. 1, ¶¶ 23–25]. Furthermore, Zhejiang alleged that Cattaneo and Arnese harbored funds in their other companies to avoid paying E.C. Global's debt and to make it appear insolvent, comingled funds and business relationships, and failed to follow corporate formalities. [ECF No. 1, ¶¶ 26–28]. In other words, these companies were not kept "at an arm's length." *Century Sr. Servs.*, 770 F. Supp. 2d at 1266.

Defendants are not too far off the mark when they contend that Zhejiang's allegations resemble rote citation of elements without much factual substance. But "[w]hile discovery may not bear out sufficient evidence to support a claim on the merits for piercing the corporate veil at the dispositive motion stage or at trial," at this early stage, Zhejiang's allegations "are sufficient to state a claim and to allow discovery on the application of piercing the corporate veil doctrine." *Associated Indus. Ins.*, 2013 WL

1149668, at *6. "Defendants may ultimately prevail on the issue, but Plaintiff[] must be allowed to plead and develop [its] case." *Elof Hansson Paper*, 2011 WL 13115846, at *3.

Lastly, Defendants' position that Zhejiang's information-and-belief allegations are "not entitled to the assumption of truth" [ECF No. 10, pp. 8–9] lacks merit. The rule is not that allegations made upon information and belief may be summarily disregarded. Rather, "[t]he *Twombly* plausibility standard [] does not prevent a plaintiff from 'pleading facts alleged "upon information and belief"' where the belief is based on factual information that makes the inference of culpability plausible." *Associated Indus. Ins.*, 2013 WL 1149668, at *6. As shown above, sufficient factual information does exist in the Complaint to state a plausible veil-piercing claim.

Accordingly, the Undersigned will not dismiss Count I.[3]

**DONE AND ORDERED** in Chambers, in Miami, Florida, on September 18, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[3] As an aside, the Undersigned notes that some federal courts have refused to treat piercing the corporate veil theories as independent causes of action, and as such, have dismissed counts that exclusively seek that relief, while allowing the piercing allegations to remain in the body of the complaint. *See, e.g., Lan Li v. Walsh*, No. 16-81871-CIV, 2017 WL 3140522, at *9 (S.D. Fla. July 24, 2017) (collecting cases). Defendants, however, did not raise that argument as a basis for dismissal, so I will not dismiss Count I for that reason.

13

**Copies furnished to:**
The Honorable Joan A. Lenard
All Counsel of Record